UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

TAMPA DIVISION

CHARLES GROVER BRANT,

  Petitioner,

v.           CASE NO. 8:16-cv-2601-KKM-JSS

              **DEATH CASE**

SECRETARY, Department of Corrections,

  Respondent.

_____

## ORDER

  Charles Grover Brant was convicted of murder and sentenced to death in state court. (Doc. 1.) Brant unsuccessfully appealed his sentence to the Florida Supreme Court and unsuccessfully applied for state postconviction relief. (*Id.*) Brant now challenges his conviction and his sentence of death under 28 U.S.C. § 2254(d). (*Id.*) Because the state courts' decisions are neither contrary to, nor an unreasonable application of, controlling authority nor based on an unreasonable determination of facts, Brant is not entitled to relief.

## I. BACKGROUND

  On July 2, 2004, law enforcement officers found Sara Radfar dead inside her home. *Brant v. State*, 21 So. 3d 1276, 1277 (Fla. 2009) ("*Brant I*"). When the officers discovered

Radfar's body, Radfar was laying in the bathtub with the water running, her head was covered by a plastic bag, and her neck was wrapped in a dog leash, an electrical cord, and a woman's stocking. *Id.* A medical examiner determined that the cause of death was strangulation and suffocation. *Id.* While canvassing the area later that day, law enforcement officers spoke with Charles Brant, who was Radfar's neighbor. *Id.* Brant claimed that on the night of the homicide, he saw a man with the victim, and the man had long hair and was wearing a white button-down shirt. *Id.* Brant also claimed that the next day, he saw the man run behind his residence while wearing black pants and a yellow raincoat. *Id.* Law enforcement officers described Brant as "calm, cordial, and coherent" and Brant "did not appear to be under the influence of drugs or alcohol." *Id.*

As part of the general investigation, officers collected evidence from Brant's porch and Brant's garbage can. Officers retrieved "a debit card with the victim's name and photograph on it, a man's white cotton shirt, a yellow raincoat, a pair of black pants, a mass of long brown hair, four latex gloves, and a box that had contained women's stockings." *Id.*

Two days later, a Hillsborough County detective interviewed Brant and Brant voluntarily responded to the detective's questions. *Id.* at 1278. Initially, Brant repeated his original story, but after the detective confronted Brant with the evidence recovered from his garbage, Brant admitted his involvement in the homicide. *Id.* He told the detective that Radfar allowed him to enter her home to take pictures of tile that Brant installed. *Id.* When

Radfar walked to the bathroom, Brant grabbed her, dragged her into a bedroom, and sexually assaulted her. *Id.* To keep her quiet, Brant stuffed a sock into her mouth. *Id.* Then, he started to choke and suffocate her. *Id.* Radfar became unconscious, and after Brant suspected that she was dead, Brant started walking around Radfar's house. *Id.* At one point, Radfar regained consciousness and ran to the front door, but Brant dragged her back into the bedroom and choked and suffocated her again. Later, Brant took Radfar to the bathroom, threw her in the bathtub, and wrapped a stocking, a dog leash, and an electrical cord around Radfar's neck. *Id.* After Radfar died, Brant cleaned her house, changed into clothing he found, moved Radfar's car, left through the front door, and then walked home. *Id.* The next day, Brant reentered Radfar's home to wipe away fingerprints, but when he saw a police officer approaching her house, he locked the front door and exited through a rear window. *Id.*

The State of Florida charged Brant with murder in the first degree, sexual battery, kidnapping, grand theft of a motor vehicle, and burglary with assault or battery. (Doc. 55-1 at 40–42.) Brant moved to suppress his statements, but after an evidentiary hearing, the court denied Brant's motion. (*Id.* at 198, 360.) On May 25, 2007, Brant pleaded guilty to all charges except the kidnapping charge, to which he pleaded *nolo contendere*. (*Id.* at 420.) The defense stipulated that the DNA in the semen recovered on the victim matched Brant's DNA. (*Id.* at 876–77.)

Jury selection for the penalty phase began on August 21, 2007. (*Id.* at 1794.) But the trial judge discharged the jury panel because several prospective jurors made prejudicial comments that the entire venire heard. (Doc. 55-3 at 1966–68.) The court scheduled a new jury selection with a different venire for the following morning. (*Id.* at 1977.) However, Brant decided to waive a penalty phase jury and opted to proceed with a bench trial. Respondent's Ex. A-7 (Doc. 55-2) at 2. On November 30, 2007, the court sentenced Brant to death because three statutory mitigating factors[1] and ten non-statutory mitigating factors[2] did not outweigh the two aggravating circumstances of Brant's crime; specifically, that the murder was heinous, atrocious, or cruel and that Brant committed a capital felony while engaging in a sexual battery. (Doc. 55-1 at 640–83.).

*Brant I* affirmed Brant's murder conviction and his death sentence on direct appeal. 21 So. 3d at 1289. Brant moved for postconviction relief under Rule 3.851, FLA. R. CRIM. P., but the postconviction court denied Brant's motion, (Doc. 55-9 at 3380–3498), and the

---

[1] The trial judge found (1) that Brant had no significant history of prior criminal activity; (2) that Brant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law was substantially impaired; and (3) that Brant was thirty-nine years old at time of the offense. (Doc. 55-1 at 680–81.)

[2] The trial judge found (1) that Brant is remorseful; (2) that he cooperated with law enforcement officers, admitted the crimes, pleaded guilty, and waived a penalty-phase jury; (3) that he has borderline verbal intelligence; (4) that he has a family history of mental illness; (5) that he is not a sociopath or psychopath and does not have antisocial personality disorder; (6) that he has diminished impulse control and exhibits periods of psychosis due to methamphetamine abuse, recognized his drug dependence problem, sought help for his drug problem, and used methamphetamine before, during, and after the murder; (7) that he has been diagnosed with chemical dependence and sexual obsessive disorder, and he has symptoms of attention deficit disorder; (8) that he is a good father; (9) that he is a good worker and craftsman; and (10) that he has a reputation for being a nonviolent person. (Doc. 55-1 at 680–81.)

Florida Supreme Court affirmed on appeal. *Brant v. State*, 197 So. 3d 1051 (Fla. 2016) ("*Brant II*"). Brant's second postconviction motion was also denied (Doc. 55-13 at 414–19), and the denial was affirmed on appeal. *Brant v. State*, 284 So. 3d 398 (Fla. 2019) ("*Brant III*"). The respondent agrees that Brant timely filed his petition for the writ of habeas corpus under § 2254. (Doc. 53 at 56–58). Brant alleges nine grounds for relief.

## II.   CLAIMS BARRED FROM FEDERAL REVIEW

### A. Procedurally Defaulted Claims

#### 1) Ground One:

Brant argues that his trial counsel ineffectively assisted him during the guilt phase by advising him to plead guilty "without conducting a reasonable investigation, consulting a jury expert or doing any investigation, research or reading on the basics of jury decision making." (Doc. 1 at 11.) Brant asserts that, but for his counsel's deficient performance at the guilt phase, he would have pleaded "not guilty" and would not have waived his right to a jury during the penalty phase. (*Id.* at 6.) The respondent argues that Brant failed to previously argue that he was prejudiced as to the *penalty phase* because of his trial counsel's performance during the *guilt phase*. (Doc. 53 at 67–68.)

A federal habeas petitioner must present his federal claims by raising them in state court before bringing them in a federal petition. *See* 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an

opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). A petitioner satisfies this requirement if he fairly presents the claim in "the state's highest court" with proper jurisdiction and alerts the court to the federal nature of the claim. *Ward v. Hall*, 592 F.3d 1144, 1156 (11th Cir. 2010). "[M]ere similarity of claims is insufficient." *Duncan v. Henry*, 513 U.S. 364, 366 (1995); *Picard v. Connor*, 404 U.S. 270, 276 (1971) ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.").

In his reply, (Doc. 57 at 12), Brant contends that he presented a claim about the prejudicial effect of trial counsel's deficient performance on the penalty phase in his initial brief on appeal from the denial of postconviction relief in state court; specifically, both in the "Summary of Argument" and on pages 75 and 77. In the "Summary of Argument," Brant asserted:

> Brant's counsel rendered ineffective assistance in advising him to enter a guilty plea . . . Counsel was wrong and the jurors were irate that Brant had pled guilty and still wanted a penalty phase trial. As a result, Brant then waived a penalty phase jury. But for counsel's deficient performance, Brant would not have pled guilty but would have exercised his right to a trial.

Respondent's Ex. B-58 (Doc. 55-12) at 68. To be sure, Brant argued that trial counsel deficiently performed by advising him to plead guilty and Brant claimed that this prejudiced his decision to plead guilty. (*Id.* at 68–75.) However, Brant never argued that

counsel's deficient performance in advising him to plead guilty prejudiced him at the penalty phase by causing him to waive a penalty phase jury.

Further, even if Brant did advance this claim on appeal, Brant procedurally defaulted the claim because he never presented this claim to the postconviction court. (Doc. 55-6 at 1016–25;) *Mendoza v. State*, 87 So. 3d 644, 660 (Fla. 2011) ("A defendant may not raise a claim for the first time on postconviction appeal in a Florida court."). Additionally, even if Brant raised this claim in the postconviction court and presented it in the "Summary of Argument," Brant failed to discuss this claim in the body of his brief. Page 75 and page 77 of Brant's brief dealt with counsel's deficient performance at the penalty phase, not the guilt phase. Respondent's Ex. B-58 (Doc. 55-12) at 75, 77. Because Brant never discussed the prejudicial effect of counsel's guilt-phase performance on the penalty phase, he failed to fairly present the claim in state court. *See Shere v. State*, 742 So. 2d 215, 217 n.6 (Fla. 1999) ("In a heading in his brief, Shere asserts that the trial court erred by summarily denying nineteen of the twenty-three claims raised in his 3.850 motion. However, for most of these claims, Shere did not present any argument or allege on what grounds the trial court erred in denying these claims. We find that these claims are insufficiently presented for review."); *cf. Sweet v. State*, 810 So. 2d 854, 870 (Fla. 2002) ("[B]ecause on appeal Sweet simply recites these claims from his postconviction motion in a sentence or two, without elaboration or explanation, we conclude that these instances of alleged

ineffectiveness are not preserved for appellate review."); *Duest v. Dugger*, 555 So. 2d 849, 851–52 (Fla. 1990) ("Merely making reference to arguments below without further elucidation does not suffice to preserve issues.").

This portion of Ground One was thus not presented to the state court and now is procedurally defaulted because Brant cannot return to state court to raise it. Believing that he exhausted the claim in state court, Brant does not attempt to overcome the procedural default by arguing that either of the procedural default exceptions apply. *See Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001) (holding that a procedural default "will bar federal habeas relief" "unless either the cause and prejudice or the fundamental miscarriage of justice exception is established"). Brant is procedurally barred from advancing this claim on federal review.

### 2) Ground Nine:

Brant argues that his direct appellate counsel ineffectively assisted him by not appealing the trial court's denial of Brant's motion to suppress his confession. (Doc. 1 at 102.) Additionally, Brant claims that his postconviction counsel failed to effectively assist him by not raising the deficient performance of Brant's direct appellate counsel. (*Id.*)

Brant failed to present this claim in state court. "[A] petitioner must fairly present every issue raised in his federal petition to the state's highest court, either on direct appeal or on collateral review." *Ward*, 592 F.3d at 1156. Yet, Brant's habeas petition concedes

that "[d]irect appeal counsel failed to raise [Ground Nine] in their initial brief and first-tier postconviction counsel failed to raise it." (Doc. 1 at 102–03.) Further, Brant never raised this issue during a second round of post-conviction proceedings. (*See* Doc. 55-13 at 202–21; Doc. 55-14.) Finally, in his reply brief, Brant concedes that he procedurally defaulted Ground Nine, and that Ground Nine is therefore "foreclosed" by the Supreme Court's decision in *Davila v. Davis*, 137 S. Ct. 2058 (2017). (Doc. 57 at 30.) Thus, Brant is procedurally barred from advancing this claim on federal review.

### B. Premature

#### 1) Ground Six:

Brant alleges that he "suffers from brain damage and depression [and his] fragile mental condition could" "deteriorate under the circumstances of death row." (Doc. 50 at 82.) *Ford v. Wainwright,* 477 U.S. 399, 401 (1986), and *Atkins v. Virginia*, 536 U.S. 304, 321 (2002), held that the Eighth Amendment prohibits executing someone who is mentally incompetent.

Brant stipulated that Ground Six is not ripe, but he "raises it here to preserve it for federal review" if he becomes incompetent at the time of his execution. (Doc. 50 at 82.) *See In re Provenzano*, 215 F.3d 1233, 1235 (11th Cir. 2000) ("[A] competency to be executed claim not raised in the initial habeas petition is subject to the strictures of 28 U.S.C. § 2244(b)(2), and [] such a claim cannot meet either of the exceptions set out in

that provision."). Ground Six is dismissed without prejudice under the parties' stipulation that the claim is premature.

## III.   STANDARDS OF REVIEW UNDER SECTION 2254

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Courts grant relief under AEDPA only if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "The power of the federal courts to grant a writ of habeas corpus setting aside a state prisoner's conviction on a claim that his conviction was obtained in violation of the United States Constitution is strictly circumscribed." *Green v. Sec'y, Dep't of Corr.*, 28 F.4th 1089, 1093 (11th Cir. 2022).

Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

For purposes of § 2254(d)(1), the phrase "clearly established Federal law" encompasses the holdings only of the United States Supreme Court "as of the time of the

relevant state-court decision." *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Section 2254(d)(1) "defines two categories of cases in which a state prisoner may obtain federal habeas relief with respect to a claim adjudicated on the merits in state court." *Id.* at 404. First, a decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Id.* at 413. Second, a decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. As a result, to obtain relief under the AEDPA, "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011); *see also Lockyer v. Andrade*, 538 U.S. 63, 75 (2003) ("The 'unreasonable

application' clause requires the state court decision to be more than incorrect or erroneous. The state court's application of clearly established law must be objectively unreasonable.").

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). But the habeas court is "not limited by the particular justifications the state court provided for its reasons, and [it] may consider additional rationales that support the state court's determination." *Jennings v. Secretary, Fla. Dep't of Corr.*, 55 F.4th 1277, 1292 (11th Cir. 2022).

For purposes of § 2254(d)(2), "it is not enough to show that 'reasonable minds reviewing the record might disagree about the finding in question.'" *Brown v. Davenport*, 142 S. Ct. 1510, 1525 (2022) (quotations omitted). "An unreasonable determination of the facts occurs when the direction of the evidence, viewed cumulatively, was too powerful to conclude anything but the petitioner's factual claim." *Teasley v. Warden, Macon State Prison*, 978 F.3d 1349, 1355 (11th Cir. 2020) (internal quotation marks and alterations omitted). A state court's findings of fact are presumed correct, and a petitioner can rebut the presumption of correctness afforded to a state court's factual findings only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

Even if a petitioner succeeds in rebutting the presumption, he must show that the state court's decision is "based on" the incorrect factual determination. *Pye v. Warden, Ga. Diagnostic Prison*, 50 F.4th 1025, 1035 (11th Cir. 2022) (en banc). This is because a state court decision may still be reasonable "even if some of the state court's individual factual findings were erroneous—so long as the decision, taken as a whole, doesn't constitute an 'unreasonable determination of the facts' and isn't 'based on' any such determination." *Id.* (quoting *Hayes v. Sec'y, Fla. Dep't of Corr.*, 10 F.4th 1203, 1224–25 (11th Cir. 2021) (Newsom, J., concurring)).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Brant asserts several ineffective assistance of counsel claims under the Sixth Amendment. To succeed, Brant must show (1) deficient performance by his counsel and (2) prejudice resulting from those errors. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The first part "requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* The linchpin of this analysis is whether counsel's conduct "was reasonable considering all the circumstances." *Id.* at 688. A petitioner establishes deficient performance if "the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. A court "must judge the reasonableness of counsel's

challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

The second part requires showing that the deficient performance prejudiced the defense. *Id.* at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, a petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

"The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.' " *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)). Consequently, federal petitioners rarely prevail on claims of ineffective assistance of counsel because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (quotation and citations omitted).

Both the postconviction court, (Doc. 55-9 at 3381), and *Brant II*, 197 So. 3d at 1063, recognized that *Strickland* governs a claim of ineffective assistance of counsel. Consequently, Brant cannot meet the "contrary to" standard under § 2254(d)(1). Instead, Brant must show that the state courts either unreasonably applied *Strickland* or based their decision on an unreasonable determination of fact.

## V.   ANALYSIS

Seven of Brant's nine grounds for relief remain. Grounds One, Two, and Three allege that Brant's trial counsel ineffectively assisted his defense. (Doc. 1 at 6–89.) Ground Four alleges a *Brady* violation. (*Id.* at 89–93.) Ground Five alleges the denial of a fundamentally fair trial based on cumulative errors. (*Id.* at 94–95.) Ground Seven alleges that Brant's death sentence was based on a proportionality review scheme that is unconstitutional under the Eighth Amendment. (*Id.* at 96–99.) Finally, Ground Eight alleges that appellate counsel performed deficiently. (*Id.* at 100–02.)

### A.   Grounds One, Two, and Three:

Ground One challenges counsel's performance at the guilt phase and Grounds Two and Three challenge counsel's performance at the penalty phase. (*See id.* at 6–89.) The postconviction court determined that the performance of Brant's trial counsel was neither deficient nor prejudicial. (Doc. 55-9 at 3382–3493.) Before coming to this conclusion, the court considered the testimony of more than forty lay and expert witnesses that Brant

presented. (*Id.* at 3410–72.) *Brant II* affirmed that Brant failed to meet his burden to prove both deficient performance and resulting prejudice. 197 So. 3d at 1063–76.

This Court begins by summarizing Brant's arguments under Grounds One, Two and Three, and by summarizing the state court's resolution of Brant's claims. The Court then explains why Grounds One, Two, and Three do not present a basis for relief under § 2254(d)(1) or under § 2254(d)(2).

1) <u>Ground One:</u>

For reasons already discussed, part of Ground One is procedurally barred from federal review. But the remaining portion of Ground One is addressed below. Brant argues that trial counsel deficiently performed during the guilt phase by advising Brant to plead guilty "without conducting a reasonable investigation [and] without consulting a jury expert or doing any investigation, research or reading on the basics of jury decision making." (Doc. 1 at 11.)

The postconviction court found (1) that Brant's trial counsel were credible; (2) that after an unsuccessful attempt to suppress Brant's confession, Brant and his counsel agreed that pleading guilty was the best strategy; (3) that Brant intended to plead guilty "from day one" and not to proceed to a jury trial; and (4) that there is no reasonable probability that Brant would have insisted on going to a guilt-phase trial even if trial counsel consulted a

jury selection expert. (Doc. 55-9 at 3397–99.) *Brant II*, summarized the reason why pleading guilty was Brant's best option:

> Brant has not suggested that there was any particular defense available to him that was likely to succeed at trial. In light of his confession, which was corroborated by the crime scene, the DNA evidence, and the presence of items taken from the victim's home in his trash, it does not appear that any defense would have been available to Brant and likely to succeed at trial.

197 So. 3d at 1066.

Moreover, counsel's "decision to advise Brant to plead guilty was reasonable given that the original defense strategy to attack the confession was unsuccessful, the advice was given after alternatives were considered and rejected, and the State was proceeding on theories of both premeditated and felony murder with very strong evidence." *Brant II*, 197 So. 3d at 1065. Brant's intent to plead guilty "from day one" also influenced counsel's decisions. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information.").

The state courts largely based their "reasonableness" determination on the ample experience of the two attorneys who represented Brant. Rick Terrana, Brant's guilt-phase

counsel, had been a criminal defense attorney for over fifteen years and had tried between fifteen and twenty-five death penalty cases. *Brant II*, 197 So. 3d at 1064. Also, Terrana only "had one client sent to death row" when he was penalty phase counsel. Respondent's Ex. B-43 (Doc. 55-11) at 497–98. Bob Fraser, Brant's penalty-phase counsel, had twenty years of experience and had tried at least twenty-five first-degree murder cases. *Brant II*, 197 So. 3d at 1064. Also, Terrana testified that he and Fraser worked together as co-counsel in "a hundred cases," including at least two death penalty cases. Respondent's Ex. B-43 (Doc. 55-11) at 453–54. The state court accepted Terrana's explanation that, "if Brant waived the guilt phase and did not contest his guilt, the jury might be more kindly disposed to the mitigating circumstances presented at the penalty phase" and Fraser's explanation that, "by pleading guilty, Brant 'would be less likely to incur the ire of the jury' during the penalty phase." *Brant II*, 197 So. 3d at 1064.

For reasons explained below, Brant fails to show that the state court's determination was unreasonable under § 2254(d).

2) <u>Ground Two:</u>

Brant argues that trial counsel ineffectively assisted during the penalty phase by failing to thoroughly investigate the case and failing to present mitigation evidence. (Doc. 1 at 14.) Specifically, Brant identifies five instances.

(1) Brant's Conception: Brant argues that his counsel failed to adequately investigate his paternity because his counsel did not know that Brant was conceived in a rape. (Doc. 1 at 16.) The postconviction court and *Brant II* found that Brant's mother kept this fact a secret—from everyone but her husband and "a few distant relatives"—until the postconviction proceedings. 197 So. 3d at 1067.

*Brant II* held (1) that trial counsel did not perform deficiently because they "had no reason to" question Brant's paternity, and (2) that Brant was not prejudiced by the new information about the circumstances of Brant's conception because "any mitigating value of the circumstances of his conception would be negligible at best." 197 So. 3d at 1067.

(2) Methamphetamine Expert: Brant argues that trial counsel rendered ineffective assistance by not retaining a methamphetamine expert witness. (Doc. 1 at 16–21.) *Brant II* rejected this claim because trial "counsel presented expert testimony regarding the extent of Brant's methamphetamine use, the effects of it, and the behavior of persons who abuse methamphetamine through Dr. Maher—who was deemed by the trial court to be an expert in that field—and [through] Dr. McClain." 197 So. 3d at 1069. Based on the testimony presented at the penalty phase, "the trial court found that multiple mitigating circumstances relating to Brant's methamphetamine use were established and gave those circumstances moderate weight." *Id.* Moreover, *Brant II* noted that "trial counsel is not ineffective for failing to present cumulative evidence," and that "trial counsel is not deficient because the

defendant is able to find postconviction experts that reach different and more favorable conclusions than the experts consulted by trial counsel." *Id.* Thus, *Brant II* determined that counsel's performance was not deficient.

Also, *Brant II* ruled that Brant "failed to establish prejudice because it is questionable whether [the postconviction expert's] testimony could have established the existence of the extreme emotional disturbance mitigating circumstance." *Id.* For example, "testimony at the penalty phase from Brant's former wife that he was able to interact pleasantly with her, wash dishes, clean up the kitchen, watch the evening news, and sleep in bed next to her the night he committed the murder would have refuted the allegation that he was under an extreme emotional disturbance." *Id.*

(3) Prison Adjustment Expert: Brant argues that trial counsel assisted ineffectively by failing to call a prison adjustment expert to testify about Brant's ability to positively adjust to a prison environment. (Doc. 1 at 43–44.) However, Brant's trial counsel presented testimony that Brant was a nonviolent person and documentary evidence that Brant was a trustee in the jail notwithstanding his charges for capital murder and the other violent felonies. Based on this evidence, the trial court found as mitigating circumstances that Brant "has a reputation of being a non-violent person," and that until the murder, Brant "had led a crime-free life." (Doc. 55-1 at 739–40.) Consequently, the Florida Supreme Court held that trial counsel "did not perform deficiently in failing to present a prison

adjustment expert," and Brant was not prejudiced by the absence of such an expert because the expert's testimony would have been cumulative. *Brant II*, 197 So. 3d at 1070.

(4) Brain Damage and PET Scan Evidence: Brant argues that trial counsel ineffectively assisted by failing to reasonably investigate and present evidence about Brant's brain damage. (Doc. 1 at 37–43.) Specifically, Brant notes that his trial counsel did not call two experts to testify: Dr. Wood, a clinical neuropsychologist and forensic psychologist who conducted the PET scan, and Dr. Wu, an expert in brain imaging technology who reviewed the PET scan. (Doc. 50 at 32–37.) Trial counsel presented the brain damage and PET scan evidence through Dr. Maher instead of Dr. Wood and Dr. Wu, both of whom trial counsel had consulted. According to trial counsel, "Dr. Wood agreed with his decision not to present the PET scan images." *Brant II*, 197 So. 3d at 1072. Counsel chose (1) not to call Dr. Wood because the doctor's "ego and gamesmanship [might] obscure his message;" (2) not to call Dr. Wu because the doctor's accent made communications difficult, such that during other trials, people in the courtroom could be heard asking, "What is he saying?"; and (3) not to call either doctor because, in trial counsel's opinion, the expert witnesses that the State would call in rebuttal (doctors whom Brant's counsel had deposed) "would win in a credibility battle with Drs. Wood and Wu." *Id.* at 1072–73.

*Brant II* determined that trial counsel "made a reasonable, strategic decision to present the PET scan evidence only through Dr. Maher based on his concerns about the

credibility of Drs. Wood and Wu and his belief that he could establish the mitigating circumstances he intended to establish through Dr. Maher." *Id.* at 1073. Based on the testimony trial counsel presented during the penalty phase, the trial court found (1) the statutory mitigating circumstance "that Brant's capacity to appreciate the criminality of his conduct and his capacity to conform his conduct to the requirements of law were substantially impaired" and (2) the non-statutory mitigating circumstance "that he had a diminished ability to control his impulses." *Id.* Because of trial counsel's success, *Brant II* determined that Brant failed to show any prejudice since the testimony of Dr. Wood and Dr. Wu would have been cumulative. 197 So. 3d at 1073–74.

Brant also faults his counsel for not informing Dr. Wood and Dr. Wu about his history of eating plaster and lead paint, head banging as a child, a head wound as an adult, and his heavy use of methamphetamine. (Doc. 50 at 35.) But both doctors stated that "the testimony they gave at the [postconviction] evidentiary hearing would have been essentially the same testimony they would have given at the penalty phase, despite the new information they learned during the postconviction proceedings." 197 So. 3d at 1074. Consequently, *Brant II* held that Brant failed to show prejudice. *Id.*

(5) Background and Mental Health Investigation: Brant argues that trial counsel rendered ineffective assistance by not conducting a reasonable investigation into his childhood, family, and multi-generational background of addiction, abuse, neglect, and

sexual exposure. (Doc. 50 at 37–41.) The postconviction court found that much of the testimony and evidence presented during the evidentiary hearing about Brant's background and mental health was cumulative, (Doc. 55-9 at 3475–76), and *Brant II* ruled that "[m]ost of Brant's claims regarding the deficiencies of trial counsel's investigation are refuted by the record." 197 So. 3d at 1075. Specifically, trial counsel "presented testimony from family members, friends, peers, a professional associate, and spiritual advisors." *Id.* Brant's counsel also "presented academic records and a plethora of information regarding Brant's struggles with substance abuse." *Id.* Based on the evidence trial counsel presented, the postconviction court found, as a mitigating circumstance, "that Brant had a family history of mental illness." *Id. Brant II* ruled that Brant showed neither deficient performance nor prejudice, and that "the few pieces of noncumulative evidence" were insufficient to undermine "confidence in the outcome." *Id.*

### 3) Ground Three:

Brant argues that his trial counsel deficiently performed by failing to develop better rapport with him, failing to investigate and advise him about the mitigation evidence discussed in Ground Two, and failing to consult an expert on jury selection. (Doc. 50 at 68–75.) *Brant II* summarily rejects these claims because the first is refuted by the record, and the "other two claims are without merit [because] counsel conducted a reasonable

mitigation investigation and did not perform deficiently in failing to consult with a jury selection expert." 197 So. 3d at 1076.

\* \* \* \*

Brant is not entitled to relief on Grounds One, Two, or Three under § 2254(d) because all three Grounds allege strategic errors. "[S]trategic choices . . . are virtually unchallengeable," *Strickland*, 466 U.S. at 690, and Brant cannot demonstrate ineffective assistance of counsel by alluding to best practice. *White v. Singletary* explains:

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

972 F.2d 1218, 1220–21 (11th Cir. 1992); *accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.' ") (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)). To show deficient performance, a petitioner must show "that no competent counsel would have made such a choice." *Provenzano v. Singletary*, 148 F.3d 1327, 1332 (11th Cir. 1998). And a court's "strong reluctance to second guess strategic decisions is

even greater where those decisions were made by experienced criminal defense counsel."

*Id.*

Brant's trial counsel had extensive experience litigating criminal and death penalty cases. "[T]hat matters." *Butts v. GDCP Warden*, 850 F.3d 1201, 1205 (11th Cir. 2017); *Chandler v. United States*, 218 F.3d 1305, 1316 (11th Cir. 2000) (en banc) ("When courts are examining the performance of an experienced trial counsel, the presumption that his conduct was reasonable is even stronger."); *Williams v. Head*, 185 F.3d 1223, 1229 (11th Cir. 1999) ("It matters to our analysis that Richard Allen is an experienced criminal defense attorney."); *Provenzano v. Singletary*, 148 F.3d at 1332 ("Our strong reluctance to second guess strategic decisions is even greater where those decisions were made by experienced criminal defense counsel."). Brant's attorneys were more experienced than the attorneys that the Eleventh Circuit lauded in *Butts*:

> Butts contends that his trial team, and particularly its lead counsel, Robert Westin, was inexperienced. To the contrary, we rarely see a trial attorney who is more experienced in capital defense, or has a better record in capital trials, than Westin. As the district court pointed out, Westin had represented five capital defendants before Butts (and an additional three after him), and none of his other clients received a death sentence. Westin was assisted by a co-counsel who had handled at least 25 to 50 felony cases before the Butts case.

850 F.3d at 1205. Comparatively, Rick Terrana, Brant's guilt-phase counsel, previously tried between fifteen and twenty-five death penalty cases, and had only "one client sent to

death row" when he was penalty phase counsel. Respondent's Ex. B-43 (Doc. 55-11) at 497–98. Bob Fraser, Brant's penalty-phase counsel, had tried at least twenty-five first-degree murder cases. *Brant II*, 197 So. 3d at 1064. Also, Terrana and Fraser worked together as co-counsel in "a hundred cases," including at least two death penalty cases. Respondent's Ex. B-43 (Doc. 55-11) at 453–54. In the light of Terrana's and Fraser's experience, the state court reasonably applied appropriate deference to Brant's experienced counsel. *See Brant II*, 197 So. 3d at 1065.

The state court also properly rejected Brant's contention that his attorneys should have conducted a more thorough investigation. To prove that his attorneys' investigation was deficient, Brant presented the testimony of more than forty witness who testified about what could have been discovered. But Brant cannot obtain relief under § 2254(d) based on what "could have been" discovered. *Waters v. Thomas* explained:

> The widespread use of the tactic of attacking trial counsel by showing what 'might have been' proves that nothing is clearer than hindsight—except perhaps the rule that we will not judge trial counsel's performance through hindsight . . . We reiterate: 'The mere fact that other witnesses might have been available or that other testimony might have been elicited from those who testified is not a sufficient ground to prove ineffectiveness of counsel.'

46 F.3d 1506, 1514 (11th Cir. 1995) (en banc) (quoting *Foster v. Dugger*, 823 F.2d 402, 406 (11th Cir. 1987); *accord Spaziano v. Singletary*, 36 F.3d 1028, 1040 (11th Cir. 1994) ("The fact that a criminal defense attorney could have conducted a more thorough

investigation that might have borne fruit does not establish that that attorney's performance was outside the wide range of reasonably effective assistance.").

The Florida Supreme Court recognized "that a trial counsel's decision to not call certain witnesses to testify at trial can be reasonable trial strategy." *Brant II*, 197 So. 3d at 1073 (quotation omitted). The court's deference to trial counsel's strategic decisions is consistent with federal practice. *See Dingle v. Sec'y, Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007) ("Even if counsel's decision [to not call a certain witness] appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was so patently unreasonable that no competent attorney would have chosen it.") (quotation omitted); *Waters*, 46 F.3d at 1512 ("Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess."); *Blanco v. Singletary*, 943 F.2d 1477, 1495 (11th Cir. 1991) ("The decision as to which witnesses to call is an aspect of trial tactics that is normally entrusted to counsel."). *Brant II* afforded proper deference to trial counsels' strategic decisions.

Under § 2254(d), "the only question that matters" is whether the state court's decision was "so obviously wrong as to be 'beyond any possibility for fairminded disagreement.'" *Shinn v. Kayer*, 141 S. Ct. 517, 526 (2020) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Brant is not entitled to relief on Grounds One, Two, or Three because he fails to show that the state court's determinations were unreasonable.

B. <u>Ground Four:</u>

Brant alleges that the State violated his rights under *Brady v. Maryland*, 373 U.S. 83 (1963), by not disclosing the identity of a confidential informant ("CI"). (Doc. 1 at 89–94.) "There are three components of a true *Brady* violation: The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

The day after Sara Radfar's murder, Brant visited Garett Coleman, his half-brother, in Orange County, Florida. (Doc. 55-9 at 3400.) Two days after the murder, Brant (with Coleman) attempted to surrender at the Orange County jail, but because there was no outstanding warrant for Brant's arrest, Brant was turned away. (*Id.*) The two brothers then went to their parents' home. (*Id.*) Later that evening,  Coleman saw deputies of the Orange County Sheriff's Office at a gasoline station, informed them of Brant's desire to "turn himself in peacefully," and revealed that Brant was at his parents' home. (*Id.* at 3400–01.) Coleman also told the Orange County deputies to call Agent Neil Clarke—who Coleman worked for as a CI—to verify his credibility. *Id.* at 3401.

The postconviction court held that Brant failed to prove a *Brady* violation because he never established that Coleman was a confidential informant. (Doc. 55-9 at 3404–05.) Further, the postconviction court held that even if Coleman was a confidential informant,

Brant's defense was not prejudiced. (*Id.* at 3405.) On appeal, Brant did not "contest the postconviction court's finding that [Coleman] was not a CI in 2004," nor did Brant explain how Coleman's alleged CI status would have been favorable to Brant's defense. *Brant II*, 197 So. 3d at 1077. Further, Coleman testified that Brant believed that Coleman was a CI in 2004. *Id.* at 1078. Thus, *Brant II* concluded that even if the information about Coleman's CI status was "favorable and material," Brant could not advance a *Brady* claim because he "knew of the evidence that he alleged was withheld." *Id.*

*Brant II*'s determination is not unreasonable under § 2254(d). A defendant cannot advance a *Brady* claim if he knew about, or should have known about, the evidence that the government withheld. *Maharaj v. Sec'y, Dep't of Corr.*, 432 F.3d 1292, 1315 (11th Cir. 2005) ("Our case law is clear that '[w]here defendants, prior to trial, had within their knowledge the information by which they could have ascertained the alleged *Brady* material, there is no suppression by the government.' ") (quoting *United States v. Griggs*, 713 F.2d 672, 674 (11th Cir. 1983)); *LeCroy v. Sec'y, Dep't of Corr.*, 421 F.3d 1237, 1268 (11th Cir. 2005) (noting that there was no *Brady* violation because the defendant could have obtained the information had he used "reasonable diligence"). Brant is not entitled to relief under Ground Four because he fails to show that the state courts unreasonably applied *Brady*.

## C. Ground Five:

Brant argues that the cumulative error asserted in Grounds One through Four caused a fundamentally unfair trial. (Doc. 1 at 94–95.) However, Brant can prove cumulative error only by showing two or more errors. "Without harmful errors, there can be no cumulative effect compelling reversal." *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984); *see also Conklin v. Schofield*, 366 F.3d 1191, 1210 (11th Cir. 2004) ("[T]he court must consider the cumulative effect of [the alleged errors] and determine whether, viewing the trial as a whole, [the petitioner] received a fair trial as is [his] due under our Constitution."); *Lucas v. Warden, Georgia Diagnostic & Classification Prison*, 771 F.3d 785, 802 (11th Cir. 2014) ("We are equally unpersuaded that the cumulative effect from Lucas's *Strickland* and *Brady* claims entitles him to relief."). Because Brant fails to prove that any of his individual claims have merit, Brant shows no cumulative prejudicial effect. *Mullen v. Blackburn*, 808 F.2d 1143, 1147 (5th Cir. 1987) ("Mullen cites no authority in support of his assertion, which, if adopted, would encourage habeas petitioners to multiply claims endlessly in the hope that, by advancing a sufficient number of claims, they could obtain relief even if none of these had any merit. We receive enough meritless

habeas claims as it is; we decline to adopt a rule that would have the effect of soliciting more and has nothing else to recommend it. Twenty times zero equals zero.").

D. **Ground Seven:**

Brant argues that his death sentence violates the Eighth Amendment of the U.S. Constitution because the proportionality review employed by the Florida Supreme Court in *Brant I*, 21 So. 3d at 1284–88, was arbitrary and capricious. (Doc. 1 at 96–99; Doc. 50 at 82–91.) Brant notes that *Godfrey v. Georgia* held that "the penalty of death may not be imposed under sentencing procedures that create a substantial risk that the punishment will be inflicted in an arbitrary and capricious manner." 446 U.S. 420, 427 (1980) (plurality opinion). Brant argues that the Florida Supreme Court affirmed an arbitrary and capricious death sentence because it did not consider "sexual assault/first-degree murder cases where the defendant did not receive death." (Doc. 50 at 90.)

Brant's argument fails for a couple reasons. First, although the Florida Supreme Court analyzed the proportionality of Brant's sentence under Florida law, *Brant I*, 21 So. 3d at 1284–88, "proportionality review is not" "required" by the U.S. Constitution in capital cases. *Lewis v. Jeffers*, 497 U.S. 764, 779 (1990); *Murray v. Giarratano*, 492 U.S. 1, 9 (1989). In *Pulley v. Harris*, the U.S. Supreme Court characterized state proportionality review as an "additional safeguard" against arbitrary and capricious death sentences, not a

constitutional requirement. 465 U.S. 37, 45 (1984). In other words, under the U.S. Constitution, Florida is not required to impose any proportionality review scheme. *Id.*

Second, Brant's characterization of the Florida Supreme Court's proportionality review is misleading. *Brant I* did address the "numerous cases" that Brant cited "to support his claim that his death sentence is disproportionate." 21 So. 3d at 1284. The Florida Supreme Court specifically named and distinguished five prior cases holding that the defendant's death sentence was disproportionate. *Id.* at 1284–86 (citing *Crook v. State*, 908 So. 2d 350 (Fla. 2005); *Cooper v. State*, 739 So. 2d 82 (Fla. 1999); *Morgan v. State*, 639 So. 2d 6 (Fla. 1994); *Kramer v. State*, 619 So. 2d 274, 278 (Fla. 1993); *Nibert v. State*, 574 So. 2d 1059 (Fla. 1990)). None of this analysis was required by the U.S. Constitution. *See Pulley*, 465 U.S. at 45. And the fact that *Brant I* carefully conducted this review demonstrates that *Brant I* was not arbitrary and capricious under the Eighth Amendment.

Finally, this Court notes that Brant referenced the Fifth and Fourteenth Amendments, and an ineffective assistance of counsel claim in the header of Ground Seven.[3] However, Brant never explains why Florida's proportionality review violates the

---

[3] In full, Brant's header states, "GROUND SEVEN: Mr. Brant's sentence of death was obtained in violation of his rights guaranteed by the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution because the Florida Supreme Court's proportionality review fails to properly narrow the class of offenders who are sentenced to death by not considering murder/rape cases where the defendant did not receive death. Brant asserted this claim as both a substantive claim based on evolving standards of decency and as a claim of ineffective assistance of appellate counsel for failing to raise the claim that this Court's appellate process violates Brant's rights to Equal Protection of the laws, Procedural and Substantive Due Process, and Brant's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments. The Florida Supreme Court's analysis and ruling on this Claim rose to the level of an objectively unreasonable determination of the facts in light of the State Court record and an objectively unreasonable determination of clearly established federal law." (Doc. 50 at 82–83)

Fifth or Fourteenth Amendments. (*See* Doc. 1 at 96–99; Doc. 50 at 82–91.)[4] Moreover, Brant never discusses his ineffective assistance of counsel claim anywhere in the body of his argument under Ground Seven. (*See* Doc. 1 at 96–99; Doc. 50 at 82–91.) Brant fails to demonstrate that the state courts' decisions were unreasonable under § 2254(d).

### E. Ground Eight:

Brant alleges that appellate counsel deficiently performed by not appealing the trial court's denial of his motion to dismiss the kidnapping charge. (Doc. 1 at 100–02.) "The standards applicable to [a defendant's] claims of ineffectiveness against trial counsel apply equally to the charges leveled against his appellate lawyer." *Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001). But to demonstrate deficient performance by appellate counsel, a habeas petitioner must prove more than that their appellate counsel failed to raise a particular issue on appeal. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1263 (11th Cir. 2014). "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes*, 463 U.S. 745, 751–52 (1983). "[T]o show that . . . counsel failed to provide the level of representation required by *Strickland*, [a petitioner] must show more than the mere fact [counsel] failed to raise potentially meritorious claims; he must show that no competent counsel, in the exercise of

---

[4] Brant vaguely alludes to the Equal Protection Clause once, (Doc. 1 at 97), and conclusively asserts that the Florida Supreme Court's analysis violated his right to "Due Process." (Doc. 50 at 91.)

reasonable professional judgment, would have omitted those claims." *Hittson*, 759 F.3d at 1263. If "appellate counsel fails to raise a claim on appeal that is so obviously valid that any competent lawyer would have raised it, no further evidence is needed to determine whether counsel was ineffective for not having done so . . . Her failure to raise it, standing alone, establishes her ineffectiveness." *Eagle v. Linahan*, 279 F.3d 926, 943 (11th Cir. 2001)

Brant argues that appellate counsel performed deficiently by not appealing the denial of his motion to dismiss the kidnapping charge. (Doc. 1 at 100–02.) Brant claims that the kidnapping charge was dismissible under Florida law. (*Id.*) *Brant II* rejected this ineffective assistance claim because even if Brant appealed the denial of his motion to dismiss, Brant's argument would have been "meritless" under state law. 197 So. 3d at 1079. Consequently, the state court determined that Brant proved neither deficient performance nor prejudice. The Florida Supreme Court is the final arbiter of Florida law, and it "is not the province of a federal habeas court to reexamine state-court determinations on state law questions." *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010); *Pinkney v. Sec'y, Dep't of Corr.*, 876 F.3d 1290, 1299 (11th Cir. 2017). Because Brant's appellate counsel did not deficiently perform, the state court reasonably concluded that Brant failed to prove his ineffective assistance of appellate counsel claim.

## VI.   CERTIFICATE OF APPEALABILITY

A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Instead, a district court or court of appeals must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a COA, Brant must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Brant has not made the requisite showing. Finally, because Brant is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

It is therefore **ORDERED** that Ground Six is **DISMISSED WITHOUT PREJUDICE** as premature, and Ground One in part and Ground Nine are **DISMISSED AS PROCEDURALLY BARRED.** Brant's Petition for Writ of Habeas Corpus (Doc. 1) is otherwise **DENIED**. The Clerk is directed to enter **JUDGMENT** against Brant and in Respondents' favor and to **CLOSE** this case.

**ORDERED** in Tampa, Florida, on March 24, 2023.

*Kathryn Kimball Mizelle*

Kathryn Kimball Mizelle
United States District Judge